**Patrick VEILLARD, Plaintiff,**

v.

**Richard M. MEDNICK, and Doctors Service Bureau, Inc., Defendants.**

**No. 98 C 1311.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 13, 1998.

864

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Michelle R. Teggelaar, Edelman & Combs, Chicago, IL, for Plaintiff.

Timothy M. McCarthy, Joseph Michael Eichberger, Jerome G. McSherry & Associates,Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

In this putative class action, plaintiff Patrick Veillard alleges that defendants Richard Mednick ("Mednick") and Doctors Service Bureau, Inc. ("Bureau") violated numerous provisions of the Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. § 1692. The one-count complaint alleges seven violations of the FDCPA stemming

from one letter sent to Veillard on October 6, 1997, from Richard M. Mednick and Associates on behalf of their creditor-clients.

Veillard claims that the defendants violated the Act in three ways: the defendants' collection letter purports to emanate from an attorney who is not actually involved in handling the file, in violation of §§ 1692e, 1692f, and 1692g; creates the false belief that Mednick is participating in the collection of the debt, in violation of § 1692j;[1] and contradicts and overshadows the required validation statement, in violation of § 1692g. Presently pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow each motion is partially granted and partially denied.

## RELEVANT FACTS

The facts of this case are straightforward and undisputed. Defendant Bureau is an Illinois corporation with its principal place of business in Evanston, Illinois. Bureau is a licensed collection agent in Illinois and has been since 1989. Defendant Richard Mednick is an attorney licensed in Illinois with his office located Evanston, Illinois. He is listed in the telephone book, Sullivan's Law Directory, Index to Law Firms, Martindale–Hubbell Law Directory, and directory assistance as an attorney. Mednick employs non-attorneys to collect debts.

Veillard is a resident of New York who became indebted to Nations Credit Commercial Corporation ("Nations") through the use of a credit card. Nations sent Veillard's debt to Bureau who in turn retained Mednick to collect the money. Mednick's office sent Veillard an unsigned collection letter, dated October 6, 1997, seeking to obtain payment owed to Nations. The letterhead used by the defendants was from "RICHARD M. MEDNICK AND ASSOCIATES", but did not explicitly state that Mednick and Associates is a law firm or that Mednick is an attorney. The body of the letter is reproduced below:

DEAR PATRICK VEILLARD:

Your seriously past-due account has been placed with us for collection.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion

thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Your best interest will be served by resolving this matter as soon as possible as our client shows this obligation to be due immediately.

Yours truly,

J. Dancer

for Richard M. Mednick

Debt Collector

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

(Pl.Ex. A.) The Court must determine whether Mednick's letter violates the Act and, if so, whether Bureau is liable for any of these violations.

Veillard asserts that Mednick and Bureau violated the FDCPA because the letter purports to emanate from Mednick, a lawyer who was not actually involved in handling the file, and the letter creates the false impression that Mednick was participating in the collection of the debt when in fact he was not. The letter does not expressly state that Mednick is an attorney, but Veillard contends that the letter conveys this impression because it is on letterhead generally reserved for the legal profession. According to Veillard, by using letterhead that suggests it is from a law firm, Mednick and Bureau are being deceptive, thereby violating the Act. Veillard also claims that the letter overshadows and contradicts the validation notice requirement. Specifically, the statement "Your best interest will be served by resolving this matter as soon as possible as our client shows this obligation to be due immediately" is likely to induce the debtor to pay

---

1. The § 1692j claim is directed at Bureau only.

within the validation period to avoid legal action.

Mednick and Bureau argue that, because the word "attorney" is nowhere in the letter, the unsophisticated consumer would not be misled or deceived into believing anything other than that the letter stemmed from a collection agency. They contend that only a very sophisticated and extremely suspicious consumer would track down whether Mednick has a law license. In addition, professionals such as architects, engineers, real estate, and life insurance people use the letterhead "and associates," therefore, the unsophisticated consumer would not believe this came from a law firm. They also argue that the letter does not threaten legal action and, therefore, that they did not violate § 1692e(5).

## LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper when the record contains no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The facts in this case are not in dispute and only questions of law are present; therefore, this case is ripe for summary judgment. *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996). We now turn to the parties's cross-motions for summary judgment.

### B. FDCPA Claims

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To this end, the Act sets certain standards for debt collectors' communications with debtors. Among them is a requirement that debt collectors advise debtors of their rights to dispute the debt and demand verification, *see* 15 U.S.C. § 1692g, a ban on false and misleading statements in collection letters, *see id.* § 1692e, and a prohibition against collecting a debt through "unfair or unconscionable fees beyond the amount in arrears," *see* § 1692f(1). Additionally, it is unlawful to "design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other that the creditor of such consumer is

participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." *See* § 1692j.

■ The Seventh Circuit evaluates communications from debt collectors "through the eyes of the unsophisticated consumer." *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483–84 (7th Cir.1997); *see Avila*, 84 F.3d at 226. The unsophisticated consumer is a hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading. *See Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994). This standard presumes a level of sophistication that "is low, close to the bottom of the sophistication meter," *Avila*, 84 F.3d at 226, and "protects the consumer who is 'uninformed, naive, or trusting,'" *Jang*, 122 F.3d at 483–84 ( citing *Gammon*, 27 F.3d at 1257). Still, the standard "admits an objective element of reasonableness," which "protects debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Id.*

## ANALYSIS

### A. Claims Relating to the Use of Mednick's Name to Suggest Attorney Involvement

Veillard claims that Mednick and Bureau violated §§ 1692e, 1692e(3), 1692e(5), 1692e(10), and 1692f of the FDCPA, and Bureau violated § 1692j, when they sent a letter out purporting to be from an attorney who was not actually involved in handling the file. Section 1692e states that a debt collector "may not use any false, deceptive, or misleading representation ... with the collection of any debt." Section 1692e(3) prohibits any "false representation or implication that any individual is an attorney or that any communication is from an attorney." Section 1692e(5) bars debt collectors from threatening "any action that cannot legally be taken or that is not intended to be taken." Collectors violate § 1692e(10) when they use "any false representation or deceptive means to collect ... any debt." Under § 1692f, a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Finally, § 1692j states that

"[i]t is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor . . . is participating in the collection of . . . the debt."

■ An attorney sending dunning letters must be directly and personally involved in the debt collection to comply with the strictures of FDCPA. *Avila*, 84 F.3d at 222. According to *Avila*, personal involvement "include[s] reviewing the file of individual debtors to determine if and when [letters] should be sent or approving the sending of letters based on the recommendations of others." *Id.* at 227. *Avila* explains that the use of an attorney's letterhead and his signature on collection letters could give consumers the false impression that the letters are communications from an attorney, *id.*, and that

> [a]n unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.

*Id.* at 228. The *Avila* court held that using the term "attorney" without an attorney actually working on the file was confusing as a matter of law. *See id.*

■ The letters in *Avila* are similar to those presented here. Although the letter is unsigned, it comes from "J. Dancer for Richard M. Mednick." Dancer is referred to as a debt collector; however, by stating that Dancer wrote letter on behalf of Mednick, the unsophisticated debtor could logically conclude that Mednick supervised the file. Thus the question is whether an unsophisticated debtor would be misled into believing that Mednick is a lawyer.

Mednick and Bureau argue that, because the word "attorney" is not in the letter, the unsophisticated consumer would not be misled or deceived into believing anything other than that the letter came from a collection agency. They contend that only a very sophisticated and extremely suspicious consumer would investigate whether Mednick has a law license. In addition, they argue that because other professionals such as architects, engineers, real estate, and life insurance people use "and associates," an unsophisticated consumer could not reasonably believe the letter came from a law firm.

The defendants' arguments are unpersuasive. In today's world, a person does not need to have a Sullivan's Directory or other legal publication to determine that Richard Mednick and Associates is a law firm. The unsophisticated consumer need only request a telephone number from directory assistance to determine that Mednick and Associates is a law firm. In addition, it would be unusual for a non-lawyer, using the connotation "and Associates," to be involved in the business of collecting debts. The circumstances surrounding the disputed letter could lead an unsophisticated consumer to believe that Richard Mednick and Associates is a law firm prepared to take legal action on the debt. *Compare Avila* at 228.

Accordingly, we hold as a matter of law that Mednick and Bureau violated §§ 1692e, 1692e(3), and 1692e(10). We grant Veillard's motion for summary judgment on these issues. In addition, we conclude that Bureau violated § 1692j and grant Veillard's motion for summary judgment on that issue.

■ As to Veillard's § 1692e(5) claim, we find that, as a matter of law, the letter does not contain any specific or implied threat that legal action will be taken against him. There is nothing in the letter that refers to legal action and the mere inference that legal action could be taken because the letter is on law firm letterhead is not enough for § 1692e(5) purposes. *See Jenkins v. Union Corp.*, 999 F.Supp. 1120 (N.D.Ill.1998). Therefore, we grant defendants' motion for summary judgment on that issue.[2]

---

2. Veillard also brought a § 1692f claim based on the same argument, however, his attorneys never discussed this alleged violation in their motion and therefore we consider it waived. Even if Veillard's § 1692f claim is not waived, there was no violation of subsections 1 through 8. These subsections create violations for specific acts, none of which are applicable here. Veillard would be left with the general provision that states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. Because Veillard did not discuss this, we do not express an opinion on

## B. Claims of Overshadowing and Misrepresenting the Validation Period

To ensure that consumers have a fair chance to dispute and demand verification of their debts, § 1692g requires debt collectors to send debtors a "validation notice". A validation notice must explain that the debtor has 30 days to dispute the validity of all or a portion of the debt. § 1692g(a)(4). If the debtor disputes the debt, the collector must cease collection efforts until it sends information verifying the debt. § 1692g(b). If the debtor does not dispute the debt, the collector may assume it is valid. § 1692g(a)(3).

[8] A validation notice that explains the debtor's right to contest a debt nevertheless violates § 1692g if the notice is somehow overshadowed or otherwise contradicted by accompanying or subsequent messages. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518 (7th Cir.1997). For example, in *Avila*, the Seventh Circuit held that a validation notice with a threat to sue and the statement "if the above does not apply to you we shall expect payment … within ten (10) days" violated § 1692g. 84 F.3d at 226. The *Avila* court explained that "[a] debt validation notice, to be valid, must be effective, and it cannot be cleverly couched in such a way as to eviscerate its message." *Id.* The court found the letter did just that because it left the debtor without "a clue as to what he was supposed to do before real trouble begins." *Id.* Although *Avila* involved overshadowing from an express threat, subsequent Seventh Circuit decisions hold that an express threat is not essential to an overshadowing claim, *see, e.g., Chauncey*, 118 F.3d at 519 (a collection letter informing a debtor that failure to pay in full within 30 days could lead to "a decision to pursue other avenues to collect a debt" violated 1692g), and has espoused a consumer "confusion" standard instead,[3] *see Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir.1997).

In *Bartlett*, the court broadly stated that the "unsophisticated consumer is to be protected against confusion, whatever form it takes." *Id.* Plaintiff Bartlett's collection letter contained the standard validation notice informing him about his thirty-day right to dispute and demand verification of the debt, but added directly below the notice that "suit may be commenced at any time before the expiration of this thirty (30) days." *Id.* While noting that § 1692g does not prohibit a debt collector from threatening litigation or even instituting a lawsuit before the validation period expires, the court held that the collector must adequately explain how its right to seek collection or file suit coexists with the debtor's validation rights. *Id.* In *Bartlett*, the threat to sue if payment was not made within one week while simultaneously informing Bartlett of his thirty-day validation rights "turned the required disclosure into legal gibberish." *Id.* at 501.

Using the *Bartlett* standard, this Court found that a dunning letter violated the FDCPA by asking the debtor to "immediately make payment to or arrangements with" the creditor, while simultaneously granting him thirty days to challenge the validity of the debt without explaining which provision takes precedence. *Jenkins v. Union Corp.*, 999 F.Supp. 1120, 1132 (N.D.Ill.1998). Indeed, a collection letter that does not expressly request immediate payment can also overshadow the validation notice by creating a confusing impression of urgency, when, in reality, the consumer has thirty days in which to decide on his course of action. *Ozkaya v. Telecheck Servs., Inc.*, 982 F.Supp. 578, 583–84 (N.D.Ill.1997) (plaintiff stated valid overshadowing claim where offending letter was confusing because it "urg[ed]

whether the defendants violated this general provision.

**3.** Other circuits likewise hold that the offending letter need not contain an overt threat, but may violate § 1692g with an implied threat, see *Russell v. Equifax*, 74 F.3d 30, 30 (2d Cir.1996) (letter's statements that, "if you do not dispute this claim (see reverse side) and wish to pay it within the next 10 days we will not post this collection to your file" and "it is our practice to

post unpaid collections in the amount of $25 or more to individual credit records," overshadowed debtor's thirty-day right to dispute the debt); or, in the absence of an implied threat, confusing language, see *Miller v. Payco–General American Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991) (letter demanding "immediate full payment" and instructing the consumer to telephone the creditor "now" could confuse the debtor into giving up his or her validation rights).

[plaintiff] to resolve the dispute 'quickly' when, in fact, she had at least thirty days.").

█] Veillard contends that the letter's 30-day notification information conflicts with the sentence "[y]our best interest will be served by resolving this matter as soon as possible as our client shows this obligation to be due immediately," and creates confusion in violation of § 1692g. We see no distinction between "make payment immediately" and "this obligation to be due immediately." Both phrases convey the same message: a payment is due immediately on the debt. The confusion here is that Mednick does not explain what will happen if Veillard disputes the validity of the debt. One sentence could have cleared up the confusion: "If you should dispute this debt, we will discontinue collection efforts immediately until we verify that the debt is accurate."

Defendants counter that the *Gammon v. Belzer*, 1997 WL 189291 (N.D.Ill.1997), decision refutes Veillard's § 1692g claim. We disagree. In *Gammon*, the letter stated that "[y]our immediate attention to this matter is in your best interest"; it never asked for payment immediately or within any time period under thirty days. *Id.* at 2. The *Gammon* court dismissed the § 1692g claim with prejudice because this sentence was merely a recommendation that the plaintiff "look into the matter as soon as possible." *Id.* at 3. Mednick's letter, on the other hand, ends with the unequivocal comment "our client shows this obligation to be due immediately." Thus, Mednick's letter is akin to the letter in *Jenkins*, rather than the one at issue in *Gammon*. Accordingly, we find the letter in violation of § 1692g.[4]

## CONCLUSION

The Court holds as follows:

(1) Mednick and Bureau were in violation of § 1692e because Mednick's letter was misleading and deceiving.

(2) Mednick and Bureau were in violation of § 1692e(3) because Mednick's letter gave the false representation that the communication was from an attorney.

(3) There was no threat of legal action in the letter, therefore, there was no violation of § 1692e(5).

(4) Mednick and Bureau used false representations and deceptive means in their letter, in violation of § 1692e(10).

(5) Because this Court found Mednick and Bureau in violation of several provisions of § 1692e, we express no opinion as to the § 1692f claim.

(6) Mednick and Bureau violated § 1692g because their letter would confuse the unsophisticated consumer.

(7) Bureau violated § 1692j when they furnished the form for the letter to deceive the plaintiff.

Accordingly, as set forth above and for reasons stated, the parties' cross motions for summary judgment (17–1) and (20–1) are hereby GRANTED in part and DENIED in part.

All matters regarding liability between the parties have been resolved. The sole remaining issue before this Court, other than damages, is plaintiff's motion for class certification. The Court's preliminary review of this motion indicates that certification of plaintiff's proposed class is appropriate. *See e.g. Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). However, the defendants will be given until October 27, 1998, to file any objections to plaintiff's motion for class certification. A status hearing will be held in open court on October 30, 1998, at 9:00 a.m.

**4.** Veillard's complaint stated a § 1692e claim; however, he never discussed this alleged violation in their motion and therefore it is waived.